UNITED STATES BANKRUPTCY COURT

DISTRICT OF IDAHO

| | | |
|---|---|---|
| IN RE | ) | |
| | ) | |
| HART CREEK RANCH, LLC, | ) | Case No. 12-00059-TLM |
| | ) | |
| Debtor. | ) | Chapter 11 |
| _____ | ) | |

**MEMORANDUM OF DECISION**
_____

**INTRODUCTION**

Before the Court is the objection of the chapter 11 debtor in possession, Hart Creek Ranch, LLC ("Debtor"), to a proof of claim filed by secured creditor Blackburne & Sons Realty Capital Corporation ("Creditor").[1] *See* Doc. No. 66 ("Objection"). The Objection was heard on June 25, 2012, and taken under advisement. This Decision constitutes the Court's findings and conclusions.[2]

**BACKGROUND AND FACTS**[3]

Debtor filed the petition commencing this chapter 11 case on January 11,

---

[1] Unless otherwise indicated, all statutory references are to the Bankruptcy Code, Title 11 U.S.C. §§ 101-1532.

[2] Fed. R. Bankr. P. 7052, 9014.

[3] The Court takes judicial notice of its files and records to set the procedural stage, and to identify underlying facts related to the conduct of the case. *See* Fed. R. Evid. 201.

MEMORANDUM OF DECISION - 1

2012. On January 25, Debtor filed its schedules and statements. Debtor listed an interest in a 546 acre parcel of real property in Oreana, Idaho (the "Property") along with another 160 acre parcel. Debtor alleged the Property had a value of $1,900,000. *See* Doc. No. 16 at sched. A. Creditor is shown by Debtor as holding an oversecured but "disputed" claim in the Property in the amount of $850,000. *Id.* at sched. D.

On March 2, 2012, Creditor filed a motion to convert the case to a chapter 7 liquidation or, alternatively, to dismiss. Doc. No. 30 ("Conversion Motion"). Creditor filed affidavits in support of the Conversion Motion and scheduled a hearing on April 16. Debtor also filed an affidavit in advance of hearing, and both Debtor and Creditor disclosed potential witnesses and exhibits prior to hearing. Creditor specifically filed a notice of intent to present testimony and written evidence at the time of hearing pursuant to Fed. R. Bankr. P. 9014(e) and LBR 9014.1. Doc. No. 52.

Hearing on the Conversion Motion was held as scheduled. Certain exhibits were admitted by stipulation, and witness Lorna Steiner was examined. *See* Doc. No. 58 (minute entry). Creditor attempted to call an additional witness to testify, but the Court sustained Debtor's objection on the basis that the individual had not been properly disclosed by Creditor as a potential witness. Creditor then rested. Debtor moved for a judgment denying the Conversion Motion under Fed. R. Civ.

MEMORANDUM OF DECISION - 2

P. 52(c), incorporated by Fed. R. Bankr. P. 7052.[4] The Court granted that request, and denied the Conversion Motion.[5]

After the unsuccessful Conversion Motion, Creditor filed a timely[6] proof of claim, Claim No. 3-1, asserting a total obligation of $945,046.18 of which $175,777.00 was allegedly secured. A component of Creditor's proof of claim was $30,827.00 in post-petition attorneys' fees and $26.90 in post-petition costs. *Id.* at 3.

On May 18, Debtor filed the Objection, contending that, since Creditor indicated in Claim No. 3-1 it was undersecured, it could not claim post-petition attorneys' fees and costs under § 506(b).[7] Debtor also alleged the amount of such post-petition fees was "unreasonably high."

---

[4] Civil Rule 52(c), entitled "Judgment on Partial Findings," provides in pertinent part: "If a party has been fully heard on an issue during a nonjury trial and the court finds against the party on that issue, the court may enter judgment against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue."

[5] Civil Rule 52(c) also requires a judgment on partial findings to be supported by findings of fact and conclusions of law, and the Court orally entered the same at the time of ruling. *See* Doc. No. 58.

[6] Under LBR 3003.1, proofs of claim in chapter 11 cases are to be filed within 90 days of the first date set for the § 341(a) meeting. The bar date here was May 11, 2012. (The notice of commencement of case, Doc. No. 9, contained typographical errors as to both the date of the § 341(a) meeting and the claim bar date; each referred to "2011" rather than "2012.") Here, Creditor's proof of claim filed May 5, 2012, was timely.

[7] Creditor at no time offered an explanation for its assertion of a right to post-petition fees and costs on an undersecured claim. However, as discussed *infra*, both Debtor and Creditor now take the position that the claim is oversecured.

MEMORANDUM OF DECISION - 3

Within days of its Objection, Debtor filed a proposed chapter 11 plan and disclosure statement. Doc. Nos. 68, 69 ("First Disclosure Statement"). Consistent with Debtors' schedule A, Debtor's First Disclosure Statement asserted the value of the Property was $1,900,000. *Id.* at 11. Nevertheless, the plan was inconsistent, and treated Creditor as having a secured claim of only $175,777.00 – as per Claim No. 3-1 – and placed the balance of Creditor's claim in a separate unsecured class. Doc. No. 68 at 6-7.[8]

On May 22, four days after the Objection, and one day after the filing of Debtor's First Disclosure Statement, Creditor filed an amended proof of claim, Claim No. 3-2. This claim, still in the total amount of $945,046.18, now alleged the value of the Property was $1,900,000 – consistent with Debtor's assertions of value – and asserted the claim was fully secured.

At the June 25 hearing on the Objection, Debtor conceded the plan's attempted treatment of Creditor as partially secured was inconsistent with its own schedule and First Disclosure Statement estimate of the value of the Property. Debtor continued to argue, however, that Creditor's post-petition fees, though

---

[8] Class 7 is the unsecured portion of Creditor's claim, and Class 8 consists of all other unsecured claims against Debtor. *Id.* The treatment of the two classes differs. That is one ground on which the United States Trustee ("UST") objected to confirmation of the plan. The Court need not, at this stage, address the UST's concern nor the logic of Debtor so creating an impaired, single-creditor, unsecured class.

MEMORANDUM OF DECISION - 4

allowable in principle under § 506(b), were unreasonable in amount.[9]

### A.   Creditor's post-petition fees – Exhibit No. 208

No testimony was provided at the June 25 hearing, and the evidentiary record consists solely of Exhibit No. 208, admitted by agreement. It is an itemization of attorneys' fees charged Creditor by its counsel. As it is key to all issues presented and taken under advisement, it will be addressed in detail, both here and in the discussion that follows.[10]

Exhibit No. 208 reflects services performed by three individuals at Creditor's Boise, Idaho law firm, Angstman Johnson: attorney Matthew Ryden, billed at $225.00 per hour, attorney Matthew Christensen billed at $215.00 per

---

[9]  Even though, by the time of hearing, Creditor's amended Claim No. 3-2 had been of record for over a month, Debtor never withdrew its Objection to pre-amended Claim No. 3-1 nor filed an objection to Claim No. 3-2. Debtor evidently felt it had put the reasonableness of the post-petition fees at issue in the initial Objection, and Creditor raised no procedural concerns with proceeding on that basis. Given the parties' position, the Court will proceed to the merits as if the Objection were properly filed and directed to the amended claim, No. 3-2.

[10]  Prior to the completion of the Court's review and analysis of the record and the Objection, and the finalization and issuance of this Decision, Debtor filed an amended chapter 11 plan, Doc. No. 88, and an amended disclosure statement, Doc. No. 89 ("Amended Disclosure Statement"). The Amended Disclosure Statement indicates Creditor will be allowed a secured claim in the amount of $945,046.18 – that is to say, precisely the total amount of each of Creditor's proofs of claim, Nos. 3-1 and 3-2, which total amount *includes* the post-petition attorney fees placed at issue under the Objection. *See also* Doc. No. 88 at 6, and at 9-10 (amended plan, providing treatment of Creditor's claim). The Amended Disclosure Statement does not address the pendency of the Objection, nor how a decision thereon will be incorporated in the plan or confirmation process. (Indeed, the Amended Disclosure Statement does not even identify the Objection as "pending" litigation. *See* Doc. No. 89 at 8-9.) Notwithstanding this turn of events, nothing in these filings or otherwise in the docket unequivocally reflects a withdrawal, abandonment or settlement of the Objection. The Court concludes, therefore, that it remains at issue and should be decided, even though it is presently unaddressed in the amended plan and Amended Disclosure Statement.

MEMORANDUM OF DECISION - 5

hour, and a paraprofessional (initials "SL") billed at $95.00 per hour. Each entry contains a date, a brief description of services rendered, and the time expended by tenths of an hour.

Exhibit No. 208 divides time entries into two "categories" – one for services related to the Conversion Motion, and another for general services. It alleges the reasonable value of all services in this bankruptcy case from January 11 to May 3, 2012, is $30,827.00, comprised of $18,372.00 for the Conversion Motion and $12,455.00 for "general work."[11]  This is the fee charged for a total of 163.9 hours of work, the vast majority of which was performed by Mr. Ryden.[12]

Debtor argues the $30,827.00 in fees claimed is facially unreasonable.[13]  It notes Debtor's counsel successfully defended the Conversion Motion, and performed all other services required in the case, in far less time and at one-third the amount.[14]  Debtor suggests a reasonable fee would be 10 hours total to prepare

---

[11] Because Ex. No. 208 is divided in this manner, the only way to obtain or evaluate a purely chronological report is through manual manipulation. In undertaking that chore as to Mr. Ryden's reported services, the Court found fifteen days where Mr. Ryden performed services in both "categories." On 11 of the 16 days, total time ran between 3.4 and 6.4 hours per day.

[12] The total of 163.9 hours include five entries in the Conversion Motion category, totaling 17.10 hours, where the fee charged is shown as "$0.00." Ex. No. 208 at 4-6 (entries on 2/3 [research]; 2/22, 2/23 and 2/29 [prepare motion]; and 4/11 [prepare for hearing]). Mr. Ryden represented that these services were not billed to Creditor. Though the hours are shown in the exhibit, and discussed below, the total fees sought under § 506(b) do not include an amount for these entries.

[13] No objection is raised to Creditor's post-petition "costs."

[14] On May 23, Debtor's counsel was allowed interim compensation under § 331 in the
(continued...)

MEMORANDUM OF DECISION - 6

and argue the Conversion Motion (effectively $2,250.00 at Mr. Ryden's hourly rate), plus one-half of the $12,455.00 in "general work" (*i.e.*, $6,227.50) for a total of $8,477.50. Creditor continued to maintain the entire $30,827.00 amount shown on Ex. No. 208 was reasonable and should be allowed under § 506(b).

**DISCUSSION AND DISPOSITION**

### A. Applicable authority

The Code provides:

> (b) To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement or State statute under which such claim arose.

Section 506(b).[15] The Ninth Circuit has held:

> The language of that section [§ 506(b)] is clear. The creditor is entitled to attorneys' fees if (1) the claim is an allowed secured claim; (2) the creditor is oversecured; (3) the fees are reasonable; and (4) the fees are provided for under the agreement.

*Kord Enters. II v. California Commerce Bank (In re Kord Enters. II)*, 139 F. 3d

---

[14] (...continued)
amount of $10,178.71 (fees of $10,072.50 and costs of $106.21). Doc. No. 73. The underlying § 331 application, Doc. No. 60, reflects that the services covered the period of January 12 to April 19, thus encompassing the preparation for and April 16 hearing on the Conversion Motion. The rate charged by Debtor's primary attorney, Patrick Geile of Foley Freeman, PLLC, is $200.00 per hour, and approximately 38% of the total services shown in this § 331 application were performed by another attorney in Mr. Geile's firm at a $175.00 hourly rate.

[15] This is how the section reads after amendment in 2005. This Court discussed the nature and import of the 2005 amendments (which added the words "or State statute") in *In re Astle*, 364 B.R. 735, 739-41, 07.1 I.B.C.R. 10, 12-13 (Bankr. D. Idaho 2007).

MEMORANDUM OF DECISION - 7

684, 687 (9th Cir. 1998).[16]

### B. Creditor's claim to attorneys' fees

The first three elements of *Kord Enterprises* are present here.

#### 1. The claim is an allowed secured claim

Debtor scheduled Creditor as holding a secured claim.[17] Further, Creditor's proof of claim, No. 3-2, asserts a secured status. As Debtor has never challenged that Creditor is secured in the Property, the Court finds the first element – an allowed secured claim – is met.[18]

#### 2. The Creditor is oversecured

Consistent with its schedules, Debtor's First (and, now, Amended) Disclosure Statement show Creditor as having an oversecured claim. And, as noted above, Debtor concedes such a status, with Debtor now arguing only that the amount of the § 506(b) fees claimed by Creditor is unreasonable. The second element is met.

---

[16] *Kord Enterprises* predated the 2005 amendment discussed in the preceding footnote but remains directly applicable to fees of oversecured creditors predicated on agreement.

[17] The nature of the "dispute" signaled by Debtor's schedule D has not been raised or explained in the context of the present Objection.

[18] *See* § 502(a) (claim allowed unless party in interest raises objection); § 502(b) (specifying grounds for disallowance). The Objection here contests only the amount of the allowed secured claim – *i.e.*, the amount of § 506(b) fees – not its general status as allowable or as secured. *Accord* Debtor's Amended Disclosure Statement and related amended plan discussed at note 10 *supra.*

MEMORANDUM OF DECISION - 8

### 3.     The fees are provided for under the agreement

Creditor asserts in its response to the Objection that fees should be allowed "where provided for in the underlying agreement" and notes that, in this case, it received only the first monthly payment on a July, 2010 "loan" of $725,000 to Debtor. *See* Doc. No. 79 at 2. It thus appears Creditor relies on, in § 506(b) parlance, a right to fees and costs "under the agreement . . . under which such claim arose." This speaks to the fourth *Kord Enterprises*' element.

Proof of Claim No. 3-2 attaches a copy of an October, 2011, state court "Judgment, Order of Sale, and Decree of Foreclosure." *Id.* at 7-12. That judgment internally refers to a deed of trust recorded as Instrument No. 271766 in the records of Owyhee County, Idaho. However, Creditor's proof of claim does not attach that deed of trust nor any underlying note.[19] And the attached judgment does not speak to any right to or allowance of attorneys' fees and costs.[20]

However, the summary of the claim amount, *see id.* at 3, includes specific reference to $32,791.00 in prepetition fees and $2,028.30 in prepetition costs, something never disputed by Debtor in its Objection or at hearing. This suggests

---

[19] *Cf.* Fed. R. Bankr. P. 3001(c) ("When a claim, or an interest in property of the debtor securing the claim, is based upon a writing, the original or a duplicate shall be filed with the proof of claim.").

[20] There is a separate, August, 2011, order of the state court attached to Claim No. 3-2 that provides for $907.50 in costs awarded Creditor related to a hearing. *Id.* at 5-6. The basis of the award is not clear.

MEMORANDUM OF DECISION - 9

Debtor believes they are properly allowable on some basis.[21] And treating Creditor's claim as secured (at least in part) under the plan signals Debtor's acceptance of the existence of an underlying secured claim. And, as noted before, Debtor concedes § 506(b) applies and post-petition attorneys' fees and costs may be properly claimed thereunder, so long as they are "reasonable" in amount.

Still, the record should include the "agreement under which such claim arose" because any allowable § 506(b) fees, costs and charges are limited to those "provided for under the agreement."

The Court has located what appear to be the subject note and deed of trust in an affidavit filed in connection with Creditor's Conversion Motion. *See* Doc. No. 32 at 4-6 (note) and at 9-25 (deed of trust). The note, at ¶ 13, obligates Debtor "to pay all costs of collection, including reasonable attorneys' fees[.]" *Id.* at 5. The deed of trust secures all amounts that, *inter alia*, are owed under the note. *Id.* at 11. It also provides that Creditor "shall be entitled to collect all expenses incurred in pursuing its remedies including, but not limited to reasonable attorney fees and costs of title evidence." *Id.* at 18. It further provides: "[Creditor] shall be entitled to recover reasonable attorney's fees in the enforcement of the Note and this Security Instrument even if no court action is initiated or if no final judgment

---

[21] How these figures were reached, and whether they were validated through a ruling of the state court at some point, is decidedly unclear from the proof of claim. But no objection thereto is raised.

MEMORANDUM OF DECISION - 10

is entered." *Id.* at 19.

The Court therefore concludes the fourth *Kord Enterprises*' factor is met, and attorneys' fees incurred in Debtor's bankruptcy case, including those in connection with monitoring and evaluating the case, considering potential relief from the automatic stay, filing claims, and filing and pursuing a motion for conversion, are within the broad ambit of the underlying agreements' fee provisions.[22]

The Court may now turn to the third *Kord Enterprises* factor and the primary issue debated by the parties – the reasonableness of the fees claimed.

### 4. Reasonableness

#### a. Case law standards

Debtor argued at hearing that Idaho state law, including Idaho civil procedure rules, established criteria relevant to the reasonableness of fees, which criteria it believed Creditor could not meet.[23] In this approach, Debtor erred.

The Ninth Circuit recently analyzed the pre-2005 amendment, § 506(b) language, the same provision at issue here, in *Countrywide Home Loans, Inc. v.*

---

[22] While both parties apparently assumed this to be the case, allowance of fees under § 506(b) requires proof of the agreement "under which such claim arose" in order to establish the nature and extent of recoverable fees thereunder. This is part and parcel of the required proof. It should not be ignored, as both parties did here.

[23] Debtor appeared to rely on cases such as *In re Beach*, 2011 WL 4963003 (Bankr. D. Idaho Oct. 19, 2011). While helpful in some tangential ways, this was not a § 506(b) decision.

MEMORANDUM OF DECISION - 11

*Hoopai (In re Hoopai)*, 581 F.3d 1090 (9th Cir. 2009). *Hoopai* made clear that a creditor's "entitlement to attorneys' fees under § 506(b) is not limited by state law." *Id.* at 1098 (citing *Kord Enters.*, 139 F.3d at 688). *Hoopai* reached this conclusion by reasoning that (1) § 506(b) does not reference state law; (2) legislative history suggests Congress considered and rejected the idea that § 506(b) fees should be subject to state law; and (3) precedent interpreting § 506(b) as preempting state law remains good law. *Id.* at 1098-99. Further, it held that "in applying the 'reasonableness' limitation of § 506(b), the court must apply federal standards" rather than state law standards. *Id.* at 1101.[24]

*Hoopai* does not articulate the federal standards. However, the Ninth Circuit Bankruptcy Appellate Panel in *Segovia v. Bach Constr., Inc. (In re Segovia)*, 2008 WL 8462967 (9th Cir. BAP Oct. 22, 2008), observed that the "reasonable value" of prepetition attorney services as used in § 502(b)(4) has the same meaning as "reasonable" compensation under § 330 and "reasonable" fees under § 506(b). *Id.* at *6.[25] *See also In re Siller*, 427 B.R. 872, 880 (Bankr. E.D.

---

[24] *Hoopai* also established that the "temporal scope" of § 506(b) governs fees from the petition date through "the confirmation or effective date of the plan." *Id.* at 1099-1101. All fees presently at issue fall within such period.

[25] In concluding that the trial court had made no error in taking that approach, the BAP pointed to "one of the basic canons of statutory construction: 'words and phrases in the Bankruptcy Code should presumptively receive the same construction, even if found in different parts of the code.'" *Id.* (quoting *Clear Channel Outdoor, Inc. v. Knupfer (In re PW, LLC)*, 391 B.R. 25, 38 (9th Cir. BAP 2008)).

MEMORANDUM OF DECISION - 12

Cal. 2010) (concluding standards of reasonableness under § 502(b)(4) and § 506(b) are federal law questions independent of state standards).

The Bankruptcy Court for the District of Montana observed that in evaluating reasonableness of § 506(b) attorneys' fees, the court should "consider not only the fee agreement, but the overall fairness and reasonableness of the fee under all the circumstances." *In re Launderville*, 2012 WL 78713, at *3 (Bankr. D. Mont. Jan. 11, 2012). It also held: "'Reasonable' fees are those *necessary* to the collection and protection of a creditor's claim." *Id.* at *4 (emphasis added). That the services must be "necessary" evokes language found in § 330(a) standards. *See* § 330(a)(1)(A) (authorizing allowance of "reasonable compensation for actual, necessary services"); § 330(a)(3)(A)-(D) (including among relevant factors the time spent on services; the rates charged therefor; whether the services were necessary at the time rendered; and whether they were performed within a reasonable amount of time commensurate with the complexity, importance and nature of the issue at hand).[26] The Montana Bankruptcy Court

---

[26] In addressing post-petition fees (though not under § 506(b)) and dismissing concerns that an overactive creditor could unfairly run up fees, the Ninth Circuit observed: "[T]he sections of the Bankruptcy Code that expressly focus on compensation for attorneys generally include limitations premised on reasonableness: *e.g.*, section 303(i)(1)(B) ('reasonable attorney's fee'); section 329(b) ('reasonable value of any such services'); section 330(a) ('reasonable compensation'); section 331 (incorporates section 330); section 502(b)(4) ('reasonable value of such services'); section 503(b)(4) ('reasonable compensation'). It is counterintuitive to suppose that a court of equity would fully allow a claim for a creditor's unreasonable attorneys' fees in litigating with an attorney who can receive only 'reasonable' compensation." *SNTL Corp. v. Ctr. Ins. Co. (In re SNTL Corp.)*, 571 F.3d 826, 845 n.20 (9th Cir. 2009).

MEMORANDUM OF DECISION - 13

further stated:

> [W]here services are not reasonably necessary or where action is taken because of an attorney's excessive caution or overzealous advocacy, courts have the right and the duty, in the exercise of their discretion, to disallow fees and costs under § 506(b).

*Launderville*, 2012 WL 73713 at *4 (citation omitted).

### b.   Issues under Creditor's submissions

Under the foregoing standards and authorities, the Court can turn to the specifics of Creditor's fee claim as evidenced by Ex. No. 208.

#### i.   Paralegal charges

An initial and discrete issue is presented by the inclusion on Ex. No. 208 of charges by "SL" at $95.00 per hour for transcribing the audio tape of the § 341(a) meeting and § 343 examination. These charges[27] total $912.00 (9.6 hours at $95.00 per hour). Even if Creditor felt it prudent to have such a transcript, this stenographic work is totally clerical in nature, not lawyer or paraprofessional work, and it is inappropriate to claim legal or paralegal fees for such work.[28] The transcription amount of $912.00 will therefore be disallowed. The Court discerns

---

[27] SL's stenographic services were rendered on 2/14, 2/15, 2/16 and 2/21.

[28] *In re Jones*, 356 B.R. 39, 47-48 (Bankr. D. Idaho 2005) (citing *Missouri v. Jenkins*, 491 U.S. 274, 288 n.10 (1989)). *See also In re Stewart*, 2008 WL 8462960, at *7 (9th Cir. BAP Mar. 14, 2008).

MEMORANDUM OF DECISION - 14

no other issue with any of the paralegal charges in Ex. No. 208.[29]

All other issues relate to Mr. Ryden's time and services.[30]

### ii.    Lease and cash collateral

Debtor sought approval of a post-petition lease with Bennett Creek Farms and authority to use cash collateral. Creditor objected to those requests.[31]

Undertaking an evaluation of Debtor's request, and objecting to it, are not problematic. Such services are reasonable. What is a problem, however, is the amount of time expended. Fourteen separate entries from 2/21[32] through 3/19 refer to these motions and Creditor's objection thereto. Of these, 1 hour is SL's and 20.8 hours are Mr. Ryden's. Among such entries are those on 3/7, 3/8 and 3/12, where Mr. Ryden billed 9.4 hours in preparing a 5-page objection and his supporting affidavit.[33] Then in entries on 3/15 and 3/19, he billed another 4.6

---

[29] The balance of SL's services total 7.3 hours which, at $95.00 per hour, totals $693.50.

[30] In connection with all that follows, the Court has closely reviewed what Creditor's counsel actually filed as far as pleadings, papers and briefing, and has reviewed its notes regarding the hearings, and has reflected on the performance of counsel as observed in the courtroom.

[31] The Court was advised at hearing that the parties had reached a settlement, and an endorsed order was later submitted. The Court's discussion of time related to this aspect of the case excludes numerous post-hearing entries related to negotiations over the form of the agreed order.

[32] For convenience, the Court will abbreviate in this fashion the dates on which services were rendered as shown on the exhibit.

[33] The objection, Doc. No. 43, raised four discrete issues, some of which were premised on or supported by citations to arguments in the Conversion Motion filed by Creditor 10 days

(continued...)

MEMORANDUM OF DECISION - 15

hours in preparing exhibits, cross-examination questions, and an outline for oral argument. The 20.8 hours spent on this aspect of the case by Mr. Ryden ($4,680.00 at the suggested $225.00/hour rate) is excessive and unreasonable.

### iii. Research

Exhibit No. 208 contains eleven separate entries for counsel's "research" on legal issues (primarily stay relief, dismissal and conversion). These entries total 20.5 hours.[34] While research is a reasonable component of services, it must be measured and appropriate. The amount of time expended in such research appears excessive and is not adequately justified.

### iv. Preparation of the Conversion Motion

There are 15 separate entries for Mr. Ryden that *each* state "Prepare Motion to Convert or Dismiss" (or the functional equivalent) and a 16th entry to "Finalize and file Motion to Convert" which collectively total 41.4 hours of time.[35] These

---

[33] (...continued)
earlier. (The time spent in relation to the Conversion Motion was excessive, and is separately addressed, *infra*.) The affidavit of counsel mentioned here attempted to establish a basis for consideration of county tax assessment reports and a 2010 farm lease. Doc. No. 44. While foundation for consideration of that affidavit's attachments was wholly lacking, the issue was mooted by the parties' subsequent agreement.

[34] These services include 1/18 (.8 hours); 1/31 (2.1 hours); 2/1 (1.8 hours); 2/3 (2.3 hours); 2/6 (1.8 hours); 2/13 (.8 hours); 2/13 (1.8 hours); 4/4 (3.7 hours); 4/5 (2.4 hours); 4/10 (2.6 hours); and 5/3 (.4 hours). These total 20.5 hours. However, counsel elected not to charge for the 2.3 hours on 2/3, effectively leaving 18.2 hours which, at the suggested $225.00/hour rate, would be $4,095.00.

[35] *See* entries on 1/31 (1.3 hours); 2/6 (.8 hours); 2/7 (3.8 hours); 2/8 (2.8 hours); 2/9 (1.7 hours); 2/14 (1.5 hours); 2/15 (1.4 hours); 2/16 (2.9 hours); 2/17 (4.8 hours); 2/21 (2.2 hours); 2/22 (2.7 hours); 2/23 (4.1 hours); 2/27 (1.3 hours); 2/28 (1.7 hours); 2/29 (3.2 hours);
(continued...)

MEMORANDUM OF DECISION - 16

services are exclusive of any services denominated as "research" related to the matter of conversion (those being addressed earlier). They are also exclusive of separately itemized charges (totaling 4.1 hours) for the preparation of supporting affidavits. The time spent[36] is unreasonable and the charges claimed for the services are excessive.

### v.   Other similarly problematic charges

Exhibit No. 208 also reflects 2.6 hours in the common and ordinarily straight-forward task of preparing a witness and exhibit list and notice of intent to present evidence at the hearing on the Conversion Motion.[37] There is even a .6 hour charge on 4/5 for "researching" the witness and exhibit disclosure requirements.[38] Independent of these charges, and of those for preparing the actual Conversion Motion discussed above, there are also separately itemized charges for

---

[35] (...continued)
and 3/2 (5.2 hours).

[36] Though 41.4 hours were spent in "preparing" the Conversion Motion, counsel has reported the hours involved in, but has not charged for, the services on 2/22 (2.7 hours), 2/23 (4.1 hours), and 2/29 (3.2 hours). *See supra* note 12. The result would be 31.4 hours effectively billed which, at $225.00 per hour, would be $7,065.00. Even with that reduction, the time spent is excessive.

[37] *See* services on 4/5 (1.6 hours) and 4/9 (1.4 hours). The proposed exhibit list, Doc. No. 53, identified seven documents. The witness list, Doc. No. 54, identified one witness, Lorna Steiner. The notice of intent to present evidence, Doc. No. 52, is a one-paragraph notice filed in compliance with LBR 9014.1, which was promulgated to comply with Fed. R. Bankr. P. 9014(e), and simply indicates a party's intent to present evidence at hearing.

[38] There is also an entry on 4/9 (.6 hours) for Mr. Ryden to consult with a member of his firm and to call the court's clerk to ask about the "procedure" for an evidentiary hearing. Such charges should clearly not be borne by a client or opponent.

MEMORANDUM OF DECISION - 17

preparing arguments and witness examination for the hearing on that motion, totaling another 14.1 hours.[39]

There are, unfortunately, even more problematic entries the Court could identify.

### c. Reconciliation

Debtor does not argue that a billing rate of $225.00 per hour is outside the range of reasonableness for an attorney of Mr. Ryden's experience.[40] But with a rate this high, there is a concomitant and reasonable expectation that services will be efficiently and effectively provided. That manifestly did not occur here.

In lieu of an approach that attempts to further parse the entries on each of the specific types of services, and in light of the Court's familiarity with the entirety of Creditor's submissions and the litigation up to this point (including the performance at the Conversion Motion hearing where, as noted, Creditor's motion was denied immediately upon resting its case in chief [41]), another sort of approach will be used.

---

[39] The services are those on 4/3 (.9 hours); 4/4 (1.6 hours); 4/6 (.7 hours); 4/10 (.8 hours); 4/11 (4.8 hours); 4/13 (1.6 hours); and 4/16 (3.7 hours the morning of the 1:30 p.m. 4/16 hearing). These total 14.1 hours (or $3,172.50) however counsel seeks to recover fees for only 9.3 hours ($2,092.50) of this total, excluding any fees for the 4.8 hour entry on 4/11 in such "hearing preparation."

[40] Mr. Ryden received his JD degree and was admitted to the Bar in 2002.

[41] Success is not prerequisite for recovery of fees. However, the quality of presentation and overall performance of the described services is relevant, particularly as here where significant time was invested in research, drafting and "preparation" for hearing.

MEMORANDUM OF DECISION - 18

The quality of services rendered, and the amount of time spent in rendering them, do not justify the application of the suggested $225.00 per hour rate. The time spent, as reported in Ex. No. 208, suggests either a significant inefficiency in the actual time spent performing necessary work, or an overworking of the case, *i.e.*, unnecessary work. Either way, it is not "reasonable" within the contemplation of the Code and precedent.

Given all the facts identified, and given the standards applicable to determining "reasonable" fees under § 506(b), the Court will allow fees for the 129.3 hours of Mr. Ryden's services, as itemized on Ex. No. 208,[42] but use an hourly rate of $112.50, resulting in a total for his time of $14,546.25. This hourly rate is one-half of what Creditor has suggested and, in the Court's view, appropriately adjusts the fees allowed. The types of services, generally, were necessary and reasonable in a creditor's pursuit of its interests in a chapter 11 reorganization. However, those services, as described, were certainly not performed within reasonable amounts of time, and certainly not in a fashion consistent with what an hourly rate of $225.00 would suggest. In the Court's view, allowing the time billed by Mr. Ryden at an effective hourly rate of $112.50 results in a reasonable allowance for the amount of actual, necessary and

---

[42] Mr. Ryden's services shown on Ex. No. 208 total 146.4 hours. After subtracting the 17.1 hours of time for which counsel did not charge (*see supra* note 12), the total time for Mr. Ryden is 129.3 hours.

MEMORANDUM OF DECISION - 19

reasonable work performed.

In addition to this adjustment, the transcription services of the paraprofessional of $912.00 are also disallowed. SL's other fees of $693.50 (7.3 hours) will be allowed, as will Mr. Christensen's fees of $129.00 (.6 hours). This results in a total § 506(b) allowance of $ 15,368.75 for post-petition attorneys' fees.

**CONCLUSION**

Debtor's Objection will be sustained in part. Though Creditor's submissions seek $30,827.00 in post-petition fees, Creditor will be allowed total § 506(b) attorneys' fees of $15,368.75 for the period of time from the petition date through and including April 16, 2012. An appropriate order shall issue.

DATED: July 12, 2012



TERRY L. MYERS
CHIEF U. S. BANKRUPTCY JUDGE

MEMORANDUM OF DECISION - 20